## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

May 27 2015, 8:40 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Gregory L. Fumarolo
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Robert J. Henke
Deputy Attorney General

David E. Corey
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Termination of the Parent-Child Relationship of: P.N., | May 27, 2015 |
| | Court of Appeals Case No. 02A03-1412-JT-454 |
| A.N., | |
| *Appellant-Respondent,* | Appeal from the Allen Superior Court |
| v. | The Honorable Charles F. Pratt, Judge |
| Indiana Department of Child Services, | Cause No. 02D08-1404-JT-51 |
| *Appellee-Petitioner.* | |

**Najam, Judge.**

## Statement of the Case

A.N. ("Mother") appeals the termination of her parental rights over her minor child, P.N. ("Child").[1] Mother presents one issue for our review, namely, whether the Indiana Department of Child Services ("DCS") presented sufficient evidence to support the termination of her parental rights.

We affirm.

## Facts and Procedural History

DCS became involved with Mother and then five-year-old Child in June 2013 as a result of Mother's long-term substance abuse.[2] On June 5 and 7, Mother tested positive for marijuana and cocaine, and, on June 11, Mother tested positive for cocaine, opiates, hydrocodone, and Tramadol. On June 14, DCS removed Child from Mother's care and placed him in foster care. The next day, on June 15, Mother was evicted from her home. On July 16, based on Mother's admissions, Child was adjudicated a child in need of services ("CHINS"). Shortly thereafter, DCS placed Child with his maternal great aunt ("Aunt"),[3] who, prior to this placement, had twice cared for Child for extended

---

[1] No father was named on Child's birth certificate, and Mother did not register a name of a prospective father with the putative father registry. During the pendency of this case, Mother did name J.D. as Child's father but never established paternity. In any event, neither J.D. nor any other prospective father participates in this appeal.

[2] Prior to the current proceeding, Mother's struggles with substance abuse resulted in the termination of her parental rights over two other children.

[3] Aunt's fiancé was also present in the home, and he helped care for Child. However, Aunt's fiancé died before the court conducted the termination hearing.

periods because of Mother's substance abuse.[4] When Child was placed with Aunt in June 2013, he could not tie his shoes and did not know the alphabet. Further, he suffered from anxiety and feared being left alone.

[4] As a part of the CHINS adjudication, Mother was given a court-ordered treatment plan, which, in relevant part, mandated that mother stay in contact with DCS, attend all case conferences, maintain appropriate housing, visit regularly with Child, establish paternity, submit to a diagnostic assessment, obtain a drug and alcohol assessment, submit to random drug screenings, and complete an in-patient drug treatment program. When Mother was in contact with DCS, she attended her case conferences and submitted to drug screenings. However, Mother failed to contact DCS between August 2013 and December 2013, and she never provided DCS with her current address. Further, Mother failed to submit to a diagnostic assessment or to obtain a drug and alcohol assessment, and, although Mother began an in-patient drug treatment program in June or July of 2014,[5] she left after a week and never returned.

[5] When Mother visited with Child, the visitations were appropriate, and Child appeared bonded to Mother. However, between July and August 2013, within a thirty-day period, Mother missed two of seven visitations, which resulted in the suspension of visitations. Mother never took the steps necessary to

---

[4] These periods of care were not court-ordered.

[5] The record does not contain the exact date.

reestablish visitations in 2013. After August 2013, Mother did not visit with Child until January 2014. When visitations began again in January 14, Mother's attendance was, once more, sporadic, and Mother last visited Child in April or May of 2014.

[6] In the interim, Child thrived in his placement with Aunt, who enrolled Child in kindergarten, where he received counseling and tutoring. Through counseling, Child's anxiety improved, and he became more secure in his placement with Aunt. Further, although Child needed to repeat kindergarten, his performance in school improved. As a result of Mother's failure to complete court-ordered services, Mother's inability to address her substance abuse problem, and the stability Child received in his placement with Aunt, in February 2014, Child's permanency plan was changed from reunification with mother to adoption. Aunt expressed a desire to adopt Child.

[7] The trial court held the termination hearing on September 16 and September 23, at which Mother did not appear,[6] and the court terminated Mother's parental rights on November 26. In so doing, in relevant part, the trial court found and concluded:

> THE COURT NOW FINDS AND CONCLUDES THAT:
>
> 3. The Court adjudicated the child to be a [CHINS] . . . and a Dispositional Hearing was held on July 16, 2014.

---

[6] J.D. also did not appear.

* * *

6. . . . [C]hild has been placed outside the care of [Mother] . . . for a period of more than six (6) months since the entry of the Disposition Decree.

7. [Mother] ha[s] failed to comply with the terms of the Parent Participation Plan and the Dispositional Decree.

* * *

12. The child's [Court Appointed Special Advocate] has also concluded that the child's best interests are served by the termination of parental rights. In support of her conclusion[,] she cites the Parent's inability to complete services.

. . . THE COURT . . . CONCLUDES THAT:

* * *

2. . . . By the clear and convincing evidence[,] . . . there is a reasonable probability that [the] reasons that brought about the child's placement outside the home will not be remedied. The mother . . . ha[s] not visited the child. [Mother] ha[s] not completed services required under the Dispositional Decree.

3. Termination must be in the child's best interests[,] and the petitioner must have a satisfactory plan for the care and treatment of the child. . . . In this case[,] the Guardian Ad Litem has concluded that termination of parental rights is in the child's best interests. The child needs a safe[,] stable[,] and nurturing home environment that can be provided through adoption. . . . [M]other . . . ha[s not] demonstrated an ability to meet/provide the child with his basic needs. Adoption of the child is an appropriate plan.

> 4. The [DCS] has thus proven by clear and convincing evidence that the allegations of the petition are true and that the parent-child relationship[] should be terminated.

Appellant's App. at 10-12. This appeal ensued.

## Discussion and Decision

[8] Mother contends that the trial court erred when it terminated her parental rights. We begin our review of this issue by acknowledging that "[t]he traditional right of parents to establish a home and raise their children is protected by the Fourteenth Amendment of the United States Constitution." *Bailey v. Tippecanoe Div. of Family & Children (In re M.B.)*, 666 N.E.2d 73, 76 (Ind. Ct. App. 1996), *trans. denied*. However, a trial court must subordinate the interests of the parents to those of the child when evaluating the circumstances surrounding a termination. *Schultz v. Porter Cnty. Ofc. of Family & Children (In re K.S.)*, 750 N.E.2d 832, 837 (Ind. Ct. App. 2001). Termination of a parent-child relationship is proper where a child's emotional and physical development is threatened. *Id.* Although the right to raise one's own child should not be terminated solely because there is a better home available for the child, parental rights may be terminated when a parent is unable or unwilling to meet his or her parental responsibilities. *Id.* at 836.

[9] Before an involuntary termination of parental rights can occur in Indiana, in relevant part, DCS is required to allege and prove:

> (A) that one (1) of the following is true:

(i) The child has been removed from the parent for at least six (6) months under a dispositional decree.

* * *

(B) that one (1) of the following is true:

(i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

* * *

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2). That statute provides that DCS need establish only one of the requirements of section (b)(2)(B) before the trial court may terminate parental rights. DCS's "burden of proof in termination of parental rights cases is one of 'clear and convincing evidence.'" *R.Y. v. Ind. Dep't of Child Servs. (In re G.Y.)*, 904 N.E.2d 1257, 1260-61 (Ind. 2009) (quoting I.C. § 31-37-14-2).

When reviewing a termination of parental rights, we will not reweigh the evidence or judge the credibility of the witnesses. *Peterson v. Marion Cnty. Ofc. of Family & Children (In re D.D.)*, 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), *trans.*

*denied*.  Instead, we consider only the evidence and reasonable inferences that are most favorable to the judgment.  *Id.*  Moreover, in deference to the trial court's unique position to assess the evidence, we will set aside the court's judgment terminating a parent-child relationship only if it is clearly erroneous. *Judy S. v. Noble Cnty. Ofc. of Family & Children (In re L.S.)*, 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *trans. denied*.

[11]   Here, in terminating Mother's parental rights, the trial court entered specific findings of fact and conclusions thereon.  When a trial court's judgment contains special findings and conclusions, we apply a two-tiered standard of review.  *Bester v. Lake Cnty. Ofc. of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005).  First, we determine whether the evidence supports the findings and, second, we determine whether the findings support the judgment.  *Id.* "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference."  *Quillen v. Quillen*, 671 N.E.2d 98, 102 (Ind. 1996).  If the evidence and inferences support the trial court's decision, we must affirm.  *In re L.S.*, 717 N.E.2d at 208.

[12]   Mother does not challenge any specific finding of fact made by the trial court. Instead, Mother contends that the trial court's conclusion that the reasons for Child's continued placement outside of her home will not be remedied[7] is

---

[7] In general terms, Mother also presents an argument under Indiana Code Section 31-35-2-4(b)(2)(B)(ii). However, the trial court did not address this prong of the termination statute in its order, and, accordingly, we limit our review to Section 31-35-2-4(b)(2)(B)(i).

clearly erroneous because "there was no testimony provided at the trial" regarding the reasons for Child's removal from Mother's home and because drug addiction is difficult to overcome, meaning the trial court should have given Mother more time to address her substance abuse. Appellant's Br. at 12.

[13] Mother's argument requires that "[w]e engage in a two-step analysis . . . . First, we must ascertain what conditions led to [Child's] placement and retention in [relative] care. Second, we determine whether there is a reasonable probability that those conditions will not be remedied." *K.T.K v. Ind. Dep't of Child Servs., Dearborn Cnty. Ofc.*, 989 N.E.2d 1225, 1231 (Ind. 2013) (citations and quotation marks omitted). In reaching its conclusion, "the trial court must consider a parent's habitual pattern of conduct to determine whether there is a substantial probability of future neglect or deprivation." *Id.* (citations and quotation marks omitted).

[14] Contrary to Mother's assertions, DCS did present evidence regarding the reasons for removal of Child from Mother's care when the trial court admitted a group of exhibits that included Mother's admissions to the allegations contained in the amended verified petition alleging Child to be a CHINS. *See* DCS Ex. E. Therein, Mother admitted to "a history of using illegal drugs or cocaine," to failing several drug tests, and to being "unable or unwilling to provide [Child] with an environment free of illegal drugs or substances." *Id.* Similarly, Aunt testified that Mother previously had her parental rights over two other children terminated as a result of her substance abuse.

[15] For the very same reasons, further demonstrated by Mother's failure to complete services, the trial court continued the placement of Child outside of Mother's home and, ultimately, terminated Mother's parental rights. Thus, the trial court could logically determine that Mother should not be given more time to address her addictions. Therefore, the trial court's conclusion that "there is a reasonable probability that [the] reasons that brought about the child's placement outside the home will not be remedied" is not clearly erroneous. Appellant's App. at 12.

[16] Mother also challenges the trial court's conclusion that termination of Mother's parental rights was in Child's best interests, as required by Indiana Code Section 31-35-2-4(b)(2)(C). In determining Child's best interests, the court was "required to look beyond the factors identified by DCS and consider the totality of the evidence. In so doing, the trial court must [have] subordinated the interests of the parent to those of the child." *In re C.A.*, 15 N.E.3d 85, 94 (Ind. Ct. App. 2014). A trial court should consider the recommendations of the case manager and court-appointed advocate when it determines whether termination is in a child's best interest. *See S.C. v. Ind. Dep't of Child Servs. (In re J.C.)*, 994 N.E.2d 278, 290 (Ind. Ct. App. 2013). "A parent's historical inability to provide a suitable environment, along with the parent's current inability to do the same, supports finding termination of parental rights is in the best interests of the children." *Id.*

[17] Mother contends that the trial court erred when it concluded that termination was in Child's best interests because Mother was not given enough time to

overcome her drug problems, Mother and Child shared a "loving devotion," and "the trial court did not appear to consider [Child's] ongoing anxiety at being removed from his mother's care." Appellant's Br. at 14. But these arguments request that we reweigh the evidence, which we will not do. The evidence at the termination hearing demonstrated that Mother had an ongoing drug problem that predated the current CHINS case, which Mother failed to address during the pendency of these proceedings by completing DCS services or otherwise. We have already held that the trial court could reasonably deny Mother more time to address her substance abuse. And, moreover, the trial court could reasonably conclude that, irrespective of Mother and Child's loving devotion and Child's anxiety, which was improving with counseling, termination was in Child's best interests. The court's judgment is not clearly erroneous in this respect.

[18] Finally, Mother asserts that relative adoption was not a satisfactory permanency plan because DCS had to do more "than have someone say 'We have a plan' to satisfy this statutory requirement." *Id.* at 15. But, as we have stated:

> Indiana courts have traditionally held that for a plan to be satisfactory, for the purposes of the termination statute, it need not be detailed, so long as it offers a general sense of the direction in which the child will be going after the parent-child relationship is terminated. *A DCS plan is satisfactory if the plan is to attempt to find suitable parents to adopt the children. In other words, there need not be a guarantee that a suitable adoption will take place, only that DCS will attempt to find a suitable adoptive parent.* Accordingly, a plan is not unsatisfactory if DCS has not identified a specific family to adopt the children. Part of the reason for this is that it is within

the authority of the adoption court, not the termination court, to determine whether an adoptive placement is appropriate.

*In re A.S.*, 17 N.E.3d 994, 1007 (Ind. Ct. App. 2014) (emphasis added; citations and quotation marks omitted), *trans. denied*. Here, DCS identified adoption as a suitable permanency plan, and the trial court agreed. In addition, Aunt expressed her desire to adopt Child. The trial court, therefore, did not err when it found the proposed permanency plan to be satisfactory.

Affirmed.

Baker, J., and Friedlander, J., concur.